UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DARIEL DUQUESNE CASTILLO,

      Petitioner,

    v.

SECRETARY KRISTI NOEM,
ATTORNEY GENERAL PAMELA
BONDI, ACTING DIRECTOR
TODD M. LYONS, FIELD OFFICE
DIRECTOR GARRETT RIPA,
DIRECTOR KEVIN GUTHRIE,

      Respondents.

Case No. 2:26-cv-652-KCD-NPM

_____/

## **ORDER**

Petitioner Daniel Duquesne Castillo has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement. (Doc. 1.)[1] He claims that the Attorney General is holding him without a bond hearing in violation of the Immigration and Nationality Act ("INA"), and his continued detention without a hearing contravenes the Fifth Amendment and the Administrative Procedures Act ("APA"). Respondents oppose the petition. (Doc. 10.) For the reasons below, the petition is **DENIED**.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

Castillo illegally entered the United States on January 17, 2022. (Doc. 1 ¶ 38.) Important for reasons discussed below, he was detained at the border and released. (*Id.*) Castillo was recently arrested by ICE and has been in immigration custody since February 3, 2026. (*Id.* ¶ 39) After processing, he landed at Alligator Alcatraz in the Middle District of Florida. (*Id.*) Castillo does not yet have a final order of removal. (Doc. 9 at 2.)

## II. Discussion

Castillo's habeas petition presses several claims. First, his detention without a bond hearing violates the Fifth Amendment's Due Process Clause. (Doc. 1 at 9-12.) Second, his detention violates the INA because he is ineligible for a bond hearing. (*Id.* at 12-13.) Finally, "[b]y invoking § 1225(b) as the basis for [his] custody and treating his detention as mandatory with no bond process, Respondents have acted 'not in accordance with law' and 'in excess of statutory jurisdiction, authority, or limitations' within the meaning" of the APA. (*Id.* at 15.) To make sense of it all, it helps to tackle these issues out of order, beginning with the INA.

### A. INA

Sections 1225 and 1226 of the INA govern the detention of noncitizens before a final order of removal. The former provision covers "inadmissible arriving aliens" who are "present in the United States [but have] not been

admitted." 8 U.S.C. § 1225(a)(1). So-called "'applicants for admission' in the language of the statute." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Pertinent here, § 1225 "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Id*. The only exception is release "on parole for urgent humanitarian reasons or significant public benefit." *Id*. at 288.

On the other hand, § 1226 has historically "authorize[d] the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings[.]" *Jennings*, 583 U.S. at 289 (emphasis added). Section 1226(a) sets out a discretionary detention framework for aliens arrested and detained "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). While the arresting immigration officer makes an initial custody determination, noncitizens detained under § 1226(a) may appeal that decision in a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306.

According to Castillo, he is entitled to a bond hearing, and § 1226 is the vehicle through which he would obtain such relief. But this argument runs headlong into the facts. Castillo was apprehended at the border. That puts him squarely under § 1225. *See, e.g.*, *Lopez v. Hardin*, No. 2:25-CV-830-KCD-

3

NPM, 2025 WL 3022245, at *4 (M.D. Fla. Oct. 29, 2025) ("[Section] 1225 applies to noncitizens arriving at a border or port and are presently seeking admission into the United States."). The fact that Castillo spent time in the United States after being released—and was eventually apprehended in the country—does not change his classification. *See Jennings*, 583 U.S. at 288 ("[W]hen the purpose of the parole has been served, 'the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" (quoting 8 U.S.C. § 1182(d)(5)(A))). "[A]lthough aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Moore v. Nielsen*, No. 4:18-cv-01722-LSC-HNJ, 2019 WL 2152582, at *3 (N.D. Ala. May 3, 2019); *see also Singh v. Noem*, No. CIV 25-1110 JB/KK, 2026 WL 146005, at *36 (D.N.M. Jan. 20, 2026).

Section 1225 says nothing "whatsoever about bond hearings." *Jennings*, 583 U.S. at 297. So Castillo's continued detention without a bond hearing cannot be in violation of the INA.

4

**B. Due Process**

Even if Castillo's detention without a bond hearing is authorized by the INA, he argues it violates the Due Process Clause. The Court cannot agree.

The Fifth Amendment requires the government to provide due process before depriving a person of life, liberty, or property. *Dep't of State v. Munoz*, 602 U.S. 899, 909-10 (2024). It is "well-established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 305 (1993); *Zadvydas v. Davis*, 533 U.S. 678, 693-94, (2001) ("[T]his Court has held that the Due Process Clause protects an alien subject to a final order of deportation.").

Nonetheless, the Supreme Court has repeatedly acknowledged that "the nature of protection [under the Due Process clause] may vary depending on [immigration] status and circumstance." *Zadvydas*, 533 U.S. at 694; *see also Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application . . . . [H]owever, once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly.").

For noncitizens who arrive at the border without lawful status—even if they manage to physically enter the country—the Due Process Clause is constrained. The Supreme Court's decision in *Dep't of Homeland Sec. v.*

5

*Thuraissigiam* shows exactly how this works. 591 U.S. 103 (2020). The petitioner in that case attempted to cross the border illegally and was apprehended a mere 25 yards into the United States. The government placed him in expedited removal proceedings under § 1225(b)(1) and kept him in continuous custody. *Id.* at 114. When his asylum claim failed, he turned to federal court. He filed a habeas petition asking for a do-over—a court order directing the government to give him another opportunity to apply for relief. *Id.* at 115.

The Supreme Court said no, holding (among other things) that the Due Process Clause did not guarantee the petitioner judicial review of his asylum denial. The Court explained that granting procedural due process rights to arriving aliens beyond what Congress had prescribed "is contrary to more than a century of precedent." *Id.* at 138. That precedent establishes a stark but unyielding rule: for foreigners who have never been admitted into the country, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, *are* due process of law." *Id.* (emphasis added). This approach stems from a simple constitutional reality— the political branches hold plenary authority over our borders. And if you have the sovereign power to keep someone out, you necessarily possess the power to set the procedural ground rules for making that determination. *Id.* at 139.

The takeaway from *Thuraissigiam* is straightforward: an arriving alien "has only those rights regarding admission that Congress has provided by statute." *Id.* at 140; *see also Mendoza-Linares v. Garland*, 51 F.4th 1146, 1148 (9th Cir. 2022) (explaining that any rights "an alien seeking initial admission into the United States" may have "in regard to removal or admission are purely statutory in nature and are not derived from, or protected by, the Constitution's Due Process Clause").

Aliens "who arrive at ports of entry" and are released into the United States pending removal, as occurred here, "are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139; *see also Heng Meng Lin v. Ashcroft*, 247 F. Supp. 2d 679, 683 (E.D. Pa. 2003) ("An excludable alien may be physically allowed into the country while his admission is being considered, but under the entry fiction is still considered to be at the border awaiting entry."). That means Castillo is legally no different from an applicant standing at the border, leaving him to claim "only those rights regarding admission that Congress has provided by statute." *Jandres-Ordonez v. Bondi*, No. 6:25-CV-084-H, 2026 WL 274493, at *12 (N.D. Tex. Jan. 23, 2026); *see also Liang v. Almodovar*, No. 1:25-CV-09322-MKV, 2025 WL 3641512, at *5 (S.D.N.Y. Dec. 15, 2025).

Section 1225 provides the procedural boundaries Congress set for arriving aliens. "[A]liens falling within the scope of § 1225(b)(2) shall be

7

detained for a [removal] proceeding." *Jennings*, 583 U.S. at 297. The statute "mandate[s] detention of applicants for admission until certain proceedings have concluded" and says nothing "whatsoever about bond hearings." *Id.* Since Congress drew the blueprint for arriving aliens, opting for mandatory detention, Castillo cannot invoke the Fifth Amendment to demand a bond hearing. For an applicant legally standing at the nation's door, the statutory text provides the beginning and the end of the constitutional inquiry. That means Castillo's due process challenge necessarily fails. *See Arana v. Arteta*, No. 1:26-CV-240-GHW, 2026 WL 279786, at *4 (S.D.N.Y. Feb. 3, 2026).

### C. APA

Finally, Castillo invokes the APA. (Doc. 1 at 14.) The difficulty here is twofold. First, Castillo has brought these claims in a habeas petition, which is the wrong vehicle for the job. The writ of habeas corpus exists to challenge the fact or duration of physical confinement. It is not a catch-all funnel for standard administrative grievances. Trying to shoehorn a freestanding APA challenge into a habeas petition simply does not work. *See Fleurimond v. Noem*, No. CV-26-00037-PHX-MTL, 2026 WL 507542, at *3 (D. Ariz. Feb. 24, 2026). A habeas petition comes with a streamlined procedure, fast-tracked rules, and a nominal filing fee. An APA challenge, by contrast, is a standard civil action with a heftier filing fee and following the ordinary, more deliberate pace of the Federal Rules of Civil Procedure. Litigants cannot

sidestep those standard requirements by simply slapping a habeas label on an administrative complaint. *See Alvarez v. Noem*, No. 5:26-CV-0013-JKP, 2026 WL 93972, at *7 (W.D. Tex. Jan. 9, 2026); *Richmond v. Scibana*, 387 F.3d 602, 606 (7th Cir. 2004) (recognizing legal distinction between habeas cases and civil actions brought under APA, which have different filing fees and exhaustion provisions).

Second, the APA itself leaves no room for these claims. The APA operates as a fallback option, providing a right of judicial review only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. But Castillo has an adequate remedy—the very habeas petition he filed to get through the courthouse doors. *See Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring). Because the writ of habeas corpus provides a fully adequate avenue to test the legality of his custody—which is the only thing Castillo is challenging here—the APA simply leaves no room for these redundant claims. *See Fleurimond*, 2026 WL 507542, at *3, *Rivera v. Noem*, No. 1:25-CV-01289 KWR-KBM, 2026 WL 381309, at *7 (D.N.M. Feb. 11, 2026).

### III. Conclusion

Based on the record provided, Castillo's detention does not violate the INA, the APA, or the Constitution.[2] He is thus not entitled to habeas relief,

---

[2] The Court is aware of a California case that certified a class action of aliens who are in immigration detention and being denied access to a bond hearing. *See Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).

and the petition (Doc. 1) is **DENIED**. The Clerk is directed to terminate any pending motions and close the case.

**ORDERED** in Fort Myers, Florida on March 31, 2026.

Kyle C. Dudek
United States District Judge

---

*Bautista* has no application here because Castillo falls outside the proposed class since he was "apprehended upon arrival." *Id.* at \*9. In addition, the Court does not find *Bautista* binding. *See, e.g., Sanchez-Moralez v. Field Off. Dir., Miami Field Off., U.S. Immigr. & Customs Enf't*, No. 26-CV-20217-JB, 2026 WL 496726, at \*2 (S.D. Fla. Feb. 23, 2026).